UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
In re:

                                  Case No. 808-73092-reg

EDMUND SALPIETRO
and LISA SALPIETRO,

                                  Chapter 13

                      Debtors.
------------------------------------------------------------------x

## MEMORANDUM DECISION

        Before the Court are two motions.  First, these chapter 13 debtors ("Debtors") seek an

order approving a loan modification which would reduce their monthly mortgage payment,

including escrows, from $3,570.00 to $2,599.94, resulting in a $970 decrease in their monthly

mortgage obligation.  Second, in response to the Debtors' proposed loan modification, the

chapter 13 trustee ("Trustee") moves under section 1329(a) of the Bankruptcy Code to upwardly

modify the Debtors' confirmed chapter 13 plan and require them to commit an additional $800

per month towards repayment of unsecured creditors.

        The Debtors' motion is granted.  The Court will not withhold approval of a loan

modification which significantly reduces a debtor's interest rate and monthly mortgage payment.

        The Trustee's motion seeking to require the Debtors to utilize their mortgage refinance

savings to increase their monthly plan payments presents the Court with an issue that is

becoming increasingly common as we emerge from our recent economic turmoil.  The Trustee

seeks to capture, for the benefit of creditors, the Debtors' monthly savings generated exclusively

by a decrease in monthly expenses resulting from the Debtors' mortgage refinancing.  Although

not presented by him in this way, in essence, the Trustee is asking the Court to conduct a post

confirmation disposable income analysis. *See* 11 U.S.C. § 1325(b).  However, absent any

specific statutory provision requiring the Court to revisit the projected disposable income analysis, and absent a clear finding of bad faith by a debtor, in deciding a motion seeking an upward plan modification based on these facts, the Court finds that a debtor who is in full compliance with the obligations of his chapter 13 plan should be entitled to rely upon a final order of the Court granting confirmation of the plan.  Although section 1329(a) does require that a proposed modification satisfy sections 1325(a) and 1322(a), among other sections of the Code, Congress chose *not* to incorporate the "projected disposable income" test of section 1325(b). This Court will not graft onto section 1329(a) a post-confirmation review of a debtor's net disposable income as the basis for granting an upward modification under section 1329.

Nor does this Court believe that section 1322(a) compels the result sought by the Trustee. The excess disposable income seemingly available to the Debtors was generated not by an increase in the Debtors' earnings or income (which might arguably be captured by section 1322(a)), but rather by a decrease in their expenses.  Without deciding this issue, it is this Court's belief that an increase in a debtor's disposable income should provide the grounds for an upward modification when it is the result of income or earnings that did not exist on the date of the original confirmation.  In this case, the Debtors have no greater income or earnings than they had on the date of confirmation.  Therefore they are in full compliance with section 1322(a) and the provision of their plan that requires them to submit their "future earnings to the supervision and control of the trustee."  This Court will not require more of them now as a result of a decrease in monthly expenses.

For these reasons as more fully explained herein, the Court will grant the Debtors' motion to approve the loan modification and deny the Trustee's motion for an upward plan

modification.

## FACTS

The Debtors filed a joint chapter 13 petition on June 12, 2008.  On October 23, 2008, the

Debtors' second amended chapter 13 plan, dated October 14, 2008, was confirmed ("Plan").

Among other things, the Plan provides that '[t]he future earnings of the debtor are submitted to

the supervision and control of the trustee", and the Debtors make plan payments of $1,200 per

month from July 12, 2008 through October 12, 2008; $1,420 per month from November 12,

2008 through December 12, 2012; and $2,200 per month from January 12, 2013 through June

12, 2013.  These payments were calculated to provide a pro rata distribution of not less than 20%

to the Debtors' unsecured creditors.

On March 16, 2009, the Debtors sought to modify the confirmed Plan downward based

on the loss of income by the Debtor, Lisa Salpietro.  The proposed amended plan sought to

reduce the Debtors' plan payments from $1,420 to $1,012 commencing with the March 12, 2009

payment through December 12, 2012, and reduce the payment from $2,200 to $1,792 for the

period January 12, 2013 through June 12, 2013.  These reduced payments would result in a

reduction of the minimum to be paid to unsecured creditors from 20% to 10%.  The Debtors'

proposed amended plan ("Amended Plan") was approved, without opposition, by Order of this

Court, dated May 14, 2009.  The Amended Plan, like the original plan, provided that the

Debtors' future earnings be "submitted to the supervision and control of the trustee."

On March 27, 2013, three months prior to the 60th month of their chapter 13 plan, the

Debtors filed the instant motion to approve a loan modification which would increase the

principal amount of their mortgage loan from $402,993.46 to $415,271.06; decrease the interest

rate from 6.875% to 4%; and extend the maturity of the loan from December 1, 2036 to March 1, 2053. The loan modification would also reduce the Debtors' monthly mortgage expense from approximately $3,570.00 to $2,599.94, resulting in a monthly reduction in expenses of approximately $970.[1] The Trustee cross-moved for an upward plan modification which would capture $800 of that monthly expense savings for the benefit of unsecured creditors for the remainder of the plan period. In response, the Debtors explain that they accepted the lender's loan modification prior to the expiration of the 60th month of their plan for fear of losing the modification if they delayed. They explain that the Debtor, Lisa, was recently diagnosed with cancer and it is expected that her income will be reduced which further underscores the urgency of the loan modification.

A hearing on the motions was held on May 16, 2013. At the hearing, considering the exigencies presented by this case, *i.e.*, the last payment under the plan coming due in June 2013, the Court granted the Debtor's motion, denied the Trustee's motion for an upward modification, and indicated that this memorandum decision, with a full reasoning, would follow.

## DISCUSSION

The Bankruptcy Code provides scant guidance when it comes to post-confirmation modification of a chapter 13 plan to account for a decrease in a debtor's post-confirmation expenses. Section 1329 provides that a confirmed chapter 13 plan may be modified prior to the

---

[1]    These numbers are taken from the Trustee's motion. The numbers presented by the Debtors vary slightly, but in either event the monthly savings is roughly $1,000.

completion of payments under the plan on the request of debtor, trustee or unsecured creditor. 11 U.S.C. § 1329(a). Any of these parties has an absolute right to seek a modification at any time between confirmation and expiration of the plan period. *See Powers v. Savage (In re Powers)*, 202 B.R. 618, 622 (B.A.P. 6th Cir. 1996). The proposed modification may (1) increase or decrease payments to a particular class of creditors provided for by the plan; (2) extend or reduce the length of the plan (but not beyond the 60th month); (3) alter the amount of a distribution to a creditor to take account for any payment to such creditor outside the plan; or (4) decrease plan payments if the debtor experiences an increase in health insurance costs but only where those costs were not previously captured in the disposable income test of section 1325(b). 11 U.S.C. § 1329(a)(1) - (4).

The proposed modified plan must satisfy the requirements of sections 1322(a), 1322(b), 1323(c), and 1325(a) of the Bankruptcy Code. Neither section 1322(b)[2] nor section 1323(c)[3] are

---

[2]    Section 1322(b) provides:
>    Subject to subsections (a) and (c) of this section, the plan may--
>    (1) designate a class or classes of unsecured claims, as provided in section 1122 of this title, but may not discriminate unfairly against any class so designated; however, such plan may treat claims for a consumer debt of the debtor if an individual is liable on such consumer debt with the debtor differently than other unsecured claims;
>    (2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims;
>    (3) provide for the curing or waiving of any default;
>    (4) provide for payments on any unsecured claim to be made concurrently with payments on any secured claim or any other unsecured claim;
>    (5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due;
>    (6) provide for the payment of all or any part of any claim

implicated under the facts of this case, however, sections 1322(a) and 1325(a) arguably are

relevant to the resolution of this matter.  Section 1322(a) provides that the plan "shall provide for

the submission of all or such portion of future earnings or other future income of the debtor to

the supervision and control of the trustee as is necessary for the execution of the plan . . ."  11

U.S.C. § 1322(a)(1).  Section 1325(a), in relevant part, provides that "the court shall confirm a

plan if–

> (1) the plan complies with the provisions of this chapter and with the other
> applicable provisions of this title;
> . . .
> (3) the plan has been proposed in good faith and not by any means forbidden by
> law;
> (4) the value, as of the effective date of the plan, of property to be distributed
> under the plan on account of each allowed unsecured claim is not less than the
> amount that would be paid on such claim if the estate of the debtor were

---

> allowed under section 1305 of this title;
>      (7) subject to section 365 of this title, provide for the
> assumption, rejection, or assignment of any executory contract or
> unexpired lease of the debtor not previously rejected under such section;
>      (8) provide for the payment of all or part of a claim against the
> debtor from property of the estate or property of the debtor;
>      (9) provide for the vesting of property of the estate, on
> confirmation of the plan or at a later time, in the debtor or in any other
> entity;
>      (10) provide for the payment of interest accruing after the date of
> the filing of the petition on unsecured claims that are nondischargeable
> under section 1328(a), except that such interest may be paid only to the
> extent that the debtor has disposable income available to pay such
> interest after making provision for full payment of all allowed claims;
> and
>      (11) include any other appropriate provision not inconsistent
> with this title.

[3]    Section 1323(c) provides:
> Any holder of a secured claim that has accepted or rejected the plan is deemed to
> have accepted or rejected, as the case may be, the plan as modified, unless the
> modification provides for a change in the rights of such holder from what such
> rights were under the plan before modification, and such holder changes such
> holder's previous acceptance or rejection.

liquidated under chapter 7 of this title on such date;

. . .

(6) the debtor will be able to make all payments under the plan and to comply
with the plan;

These select provisions embody the so-called "good faith", "best interests", and "feasibility"

tests which must be satisfied at plan confirmation.

Within these parameters, the decision to approve or disapprove a proposed plan

modification under section 1329(a) is left to the sound discretion of the bankruptcy court.  *See*

*Murphy v. O'Donnell (In re Murphy)*, 474 F.3d 143, 149 (4th Cir. 2007); *In re Powers*, 202 B.R.

at 620, 622.


***Threshold analysis***

Before turning to a statutory analysis under section 1329 and related sections, some

courts engage in a threshold *res judicata* analysis and will only entertain a proposed modification

– which would upset the *res judicata* effect of the original plan confirmation order – if the

movant shows that there has been a "substantial and unanticipated" post-confirmation change in

the debtor's circumstances.  *See, e.g., In re Murphy*, 474 F.3d at 150; *Anderson v. Satterlee (In*

*re Anderson)*, 21 F.3d 355, 358 (9th Cir. 1994); *Green Tree Acceptance v. Hoggle (In re Hoggle)*,

12 F.3d 1008, 1011 (11th Cir. 1994) (requiring an unforeseen, but not necessarily substantial,

change); *In re Fitak*, 121 B.R. 224, 226-27 (S.D. Ohio. 1990).

Other courts, relying on the plain language of section 1329, have concluded that a motion

to modify a confirmed plan under section 1329 does not require a threshold showing of changed

circumstances. *See In re Witkowski*, 16 F.3d 739, 742-46 (7th Cir. 1994) ("[b]y its terms, § 1329

does not provide for any threshold requirement to modify a bankruptcy plan."); *accord Meza v.*

*Truman (In re Meza)*, 467 F.3d 874, 877-78 (5th Cir. 2006); *Barbosa v. Soloman*, 235 F.3d 31, 38-41 (1st Cir. 2000); *Ledford v. Brown (In re Brown)*, 219 B.R. 191, 195 (B.A.P. 6th Cir. 1998).

This Court finds that *res judicata* principals do not apply to a proposed post-confirmation plan modification where the statute – section 1329(a) – specifically recognizes that a chapter 13 confirmation order may be revisited after it has become a final and non-appealable order. *See In re Witkowski*, 16 F.3d at 744-45 ("'The common-law principle of res judicata . . . does not apply "'when a statutory purpose to the contrary is evident'") (quoting *Astoria Federal Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104 (1991)). As a corollary, the Court finds that a "substantial and unanticipated change" in a debtor's circumstances should not be the threshold test in deciding whether to consider a post-confirmation plan modification. *Id.* at 743-44. Such a test is not in the statute, there is no binding precedent in this Circuit which requires it, and this Court declines to adopt that standard.[4]

Although the Court does not believe that the "substantial and unanticipated change" test

---

[4]     Although the Second Circuit Court of Appeals has not ruled on this precise issue, the Circuit noted in *dicta* that in a case of "changed circumstances" it is a more "appropriate procedure" to seek to modify the chapter 13 plan rather than dismiss and refile. *See Johnson v. Vanguard Holding Corp. (In re Johnson)*, 708 F.2d 865, 868 (2d Cir. 1983) (deciding issue of whether repeat chapter 13 filing was made in good faith, and stating "We do not read § 1329, however, as necessarily foreclosing second filings, although in a change of circumstances such as alleged here it is obviously the more appropriate procedure."). The Circuit's reference to "change of circumstances" only suggests that if there is a change in a debtor's financial circumstances that preclude the debtor from continued compliance with their plan, it is preferable for that debtor to seek a downward modification of the confirmed plan, rather than dismiss and re-file. It does not, to this Court, suggest that a proposed modification can only be approved if there is a change in circumstances, or, that a change in circumstances mandates a modification proposed by a trustee or creditor. *But cf. Ransom v. FIA Card Servs.*, 131 S.Ct. 716, 729 (2011) (citing §1329 and stating in *dicta* that if a debtor's "car payments cease during the life of the plan, just as if other financial circumstances change, an unsecured creditor may move to modify the plan to increase the amount the debtor must repay.").

should be the threshold for determining whether to modify a chapter 13 plan post-confirmation,

the statute does lend itself to *some* threshold to guide the Court's discretion.  Section 1329(a)

says that a chapter 13 plan "*may be* modified" post-confirmation and then lists four types of

permissible modifications.  11 U.S.C. § 1329(a) (emphasis added).  The first two types of

modification are open ended, *i.e.*, "increase or reduce the amount of payments on claims of a

particular class provided for by the plan . . .", and "extend or reduce the time for such payments .

. ."  The second two types of modification are more specific, but not relevant to the case at hand.[5]

The use of the term "may" and the open ended nature of subsections (1) and (2), leave discretion

to the bankruptcy court to determine whether and under what circumstances to entertain a

proposed modification over the debtor's objection, before ever reaching an analysis of whether

the proposed modification satisfies the statutory requirements of sections 1322(a) and (b), and

1325(a).

       This Court believes that the broad discretion allowed by section 1329(a) must be guided

by a respect for the finality of the confirmation process balanced by the powers bestowed on a

bankruptcy court to issue orders necessary to prevent an abuse of the bankruptcy process and

enforce Court orders.  11 U.S.C. §105(a); *Marrama v. Citizens Bank*, 549 U.S. 951 (2007)

(commenting on the "broad authority granted to bankruptcy judges to take any action that is

necessary or appropriate to 'prevent an abuse of process' . . . ").  Post-confirmation modification

of a confirmed chapter 13 plan, absent a debtor's consent, is a process that should be used

sparingly and only after the movant shows that the chapter 13 debtor has acted in bad faith or is

---

[5]      Subsection (3) allows for the alteration of the amount of distribution to a particular creditor to account for payment of such creditor outside the plan, and subsection (4) allows for reduced payments to be made under a modified plan where a debtor's expenses increase due to increased health insurance costs.

in some way out of compliance, or unable to comply, with their plan.  The Court will not upend a

confirmed chapter 13 plan, at the request of the trustee or an unsecured creditor, where a debtor

has upheld his or her end of the bargain and is in full compliance with the confirmed plan and

applicable provisions of the Bankruptcy Code.  It is only after the Court finds that a debtor has

acted in bad faith, or is not in compliance with their plan and the applicable provisions of the

Bankruptcy Code, that this Court will analyze the merits of the proposed modification.


*Section 1325(b) projected disposable income test*

Although not specifically argued by the chapter 13 trustee, the facts of this case arguably

implicate the question of whether section 1325(b)'s projected disposable income test should

apply to modifications under section 1329.  There is some disagreement among courts as to

whether the projected disposable income test of section 1325(b) should be applied at the time of

a proposed plan modification.  *Compare Forbes v. Forbes (In re Forbes)*, 215 B.R. 183 (B.A.P.

8th Cir. 1997), *with In re Martin*, 232 B.R. 29 (Bankr. D. Mass. 1999); *see also In re Campbell*,

No. 02-02897, 2003 WL 25273833, *4 (Bankr. D. Idaho Oct. 30, 2003) ("The applicability of §

1325(b) to post-confirmation plan modifications is a matter of some controversy") (citing cases);

*In re Fields*, 269 B.R. 177, 179 (Bankr. S.D. Ohio 2001) (describing the case law on this point as

"fractured").  In this Court's view, it should not.  Neither section 1329(a) nor section 1329(b)

specifically incorporates any requirement that the Court apply the disposable income test at the

time of the proposed modification.  Section 1329(a) specifically incorporates the confirmation

requirements of section 1325(a), but makes no mention of section 1325(b).  The Court can only

assume that the exclusion of section 1325(b) was intentional and Congress never intended to

require a bankruptcy court to conduct a new disposable income analysis as a basis for a proposed post-confirmation modification.  *See, e.g., In re Forbes*, 215 B.R. at 191; *In re Sounakhene*, 249 B.R. 801, 804–05 (Bankr. S.D. Cal. 2000); *In re Coleman*, 231 B.R. 397, 401 (Bankr. S.D. Ga. 1999).[6]

Even if one were to read section 1329(a) as implicitly incorporating section 1325(b) – which this Court does not – section 1325(b), by its own terms, only applies when a "trustee or the holder of an allowed unsecured claim *objects to* . . . confirmation. . ."  11 U.S.C. § 1325(b) (emphasis added).  This section simply cannot apply where the trustee or an unsecured creditor is the *proponent* of the modification.  *See Max Recovery, Inc. v. Than (In re Than)*, 215 B.R. 430, 437 (B.A.P. 9th Cir.1997).

Moreover, the projected disposable income analysis as set forth in the statute and conducted at the time of any chapter 13 confirmation is designed to foresee, for the projected life of the plan, the estimated net income that a debtor will have to fund the plan.  As is demonstrated every day in every bankruptcy court the analysis is not an exact science.  Indeed, the 2005 amendments, which in large part were designed to eliminate bankruptcy courts' discretion in this area, have resulted in the creation of a fictional financial outlook for the "above-median income" debtor.  *See* 11 U.S.C. § 1325(b) (upon objection, requiring devotion of a debtor's "projected disposable income" towards plan payments and incorporating standardized IRS monthly expense allocations if the debtor earns above the median income).  For many expense categories, the above-median income debtor is required to take standardized expense amounts, dictated by

---

[6]     This conclusion is bolstered by the fact that section 1329(a) does reference the disposable income test of section 1325(b) but only in the context of a decrease in expenses due to increased health care costs.  11 U.S.C. § 1329(a)(4).

National and Local Standards developed by the Internal Revenue Service, even if their actual expense is lower than the standardized amount. One example is the car ownership expense for which a debtor is allowed $471 per month regardless of whether the actual payment is lower, even significantly lower, than that amount. *Cf. Ransom v. FIA Card Services*, 131 S.Ct. 716, 730 (2011) (disallowing car ownership expense where debtor did not have *any* loan repayment expense).

In this Court's view, it was never Congress's intention that increases or decreases in a debtor's monthly expenses, alone, would be grounds to revisit a confirmed chapter 13 plan. The disposable income analysis conducted at the time of the original plan confirmation, although it is an estimate, should be afforded some finality and should not be disturbed solely on the basis of fluctuations in a debtor's expenses. *See* 11 U.S.C. § 1327(a) ("The provisions of a confirmed plan bind the debtor and each creditor . . ."). *But cf. Ransom*, 131 S.Ct. at 729 (stating in *dicta* that if a debtor's car payments cease during the life of the plan, the plan may be subject to upward modification due to the elimination of this standardized expense deduction).

For all of the foregoing reasons, the Court finds that the "projected disposable income" analysis of section 1325(b) should not be determinative as to whether the Court should approve an upward plan modification under section 1329.

### Section 1322(a)(1) and "future earnings or other future income"

The Trustee argues that section 1322(a)(1) is sufficient statutory basis to require the Debtors in this case to commit their monthly mortgage savings towards an upward plan modification. Section 1322(a)(1) provides, "The plan . . . (1) shall provide for the submission of

all or such portion of future earnings or other future income of the debtor to the supervision and control of the trustee as is necessary for the execution of the plan . . ." 11 U.S.C. § 1322(a)(1). This provision is mirrored, in part, in the form plan confirmed in this case, *i.e.*, the plan provides that "[t]he future earnings of the debtor are submitted to the supervision and control of the trustee. . ." The concept of capturing post-petition earnings in chapter 13 is reinforced in section 1306(a) which provides that property of the estate includes "earnings from services performed by the debtor after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first." 11 U.S.C. § 1306(a).

The Court does not disagree with the Trustee's reading of section 1322(a)(1) in the context of a proposed post-confirmation plan modification that seeks to require increased plan payments where a debtor has earnings or income in excess of that which existed on the date of confirmation. A debtor's failure to commit to the plan a realized increase in that debtor's income or earnings may put that debtor out of compliance with his plan and section 1322(a)(1), and thus subject him to an upward modification. However, those are not the facts of this case. In this case, the Debtors do not have any additional income or earnings that did not exist on the date of confirmation. The capture of additional net income created solely due to a reduction of expenses, in this Court's view, is not contemplated by the plan, or by section 1322(a)(1).[7]

---

[7]     Because the Trustee has not satisfied this Court's threshold standard, it is unnecessary to determine whether his proposed amended plan satisfies the elements of section 1325(a).

**CONCLUSION**

The Court concludes that the Trustee's motion for an upward modification of the

Debtors' plan solely on the basis that the Debtors should be required to commit monthly

mortgage savings towards repayment of creditors, should be denied.  The Debtors are in full

compliance with section 1322(a)(1) and their confirmed chapter 13 plan, as amended.  In

addition, there has been no showing that the Debtors in this case have acted in bad faith or

somehow abused the bankruptcy process.  The Debtors have made plan payments for nearly 60

months, and have not to this Court's knowledge seen any increase in earnings during the life of

the plan or received any other additional income during the life of the plan which might qualify

as a "windfall" to these Debtors.

The Court recognizes that there are a myriad of factual scenarios that may prompt

increasing motions for upward or downward post-confirmation modification by a trustee,

unsecured creditor or debtor.  The Court can only address those facts when and if presented for

resolution.  This decision is limited to the facts of this case.

For all of these reasons, the Debtor's motion to approve the loan modification will be

granted, and the Trustee's motion for upward modification of the plan, is denied.

Dated: Central Islip, New York
      June 10, 2013                     ***/s/ Robert E. Grossman***
                                          Robert E. Grossman
                                          United States Bankruptcy Judge